735 So.2d 589 (1999)
HUNZINGER CONSTRUCTION CORPORATION, a Delaware corporation and Hunzinger Construction Company, a Wisconsin corporation, Appellants,
v.
QUARLES & BRADY General Partnership, Appellee.
Nos. 96-3399, 96-3625.
District Court of Appeal of Florida, Fourth District.
June 30, 1999.
*591 Charles H. Damsel, Jr. of Damsel & Gelston, P.A., West Palm Beach and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellants.
Margaret L. Cooper of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We grant the motion for rehearing, withdraw our previously issued opinion, and substitute the following in its place.
This is an appeal from a judgment in favor of the law firm Quarles and Brady for its fees, which were incurred during litigation it conducted for appellants, Hunzinger Construction Corporation and Hunzinger Construction Company (collectively, "the Hunzinger Companies" or "Hunzinger"), and during the Hunzinger companies' subsequent claims of legal malpractice. We reverse the trial court's directed verdict on one claim of malpractice, finding that the trial court erroneously determined that failure to pursue an appeal in the *592 underlying action constituted an abandonment of the malpractice claim. We also hold that the trial court erred in giving several jury instructions which constituted improper comments on the evidence. As to the remaining issues, we affirm.
The factual scenario of this litigation is very complex and does not need to be repeated at length. In brief, Hunzinger Construction Corporation was hired to construct a development in Palm Beach County in 1986. While Quarles & Brady did not represent Hunzinger in the negotiation of the construction contract, it undertook to represent it during disputes with the owner, Concordia Properties. Construction disputes ultimately resulted in a lawsuit filed by Concordia against the Hunzinger companies and a counterclaim filed by Hunzinger Construction Corporation. Quarles & Brady represented the Hunzinger companies. After a substantial net judgment in favor of Concordia, the Hunzinger companies ultimately settled the case instead of pursuing an appeal, which would have bankrupted the companies. Hunzinger then sued Quarles & Brady for legal malpractice, alleging two acts of malpractice. Quarles & Brady answered, counterclaimed for its fees in representing Hunzinger, and moved for summary judgment on one of the malpractice counts. Partial summary judgment was granted, and Hunzinger thereafter filed a second amended complaint of malpractice. Although the court determined that most of the claims in the amended complaint were barred by the statute of limitations and did not relate back to the initial complaint, it nevertheless allowed Hunzinger to assert those claims as affirmative defenses to Quarles & Brady's cause of action for its fees. After substantial pretrial preparation and motion practice, the case went to trial and ultimately resulted in a verdict in Quarles & Brady's favor, a judgment of $360,081.76, and an award of additional fees pursuant to section 768.79, Florida Statutes (1995). Hunzinger appeals from those judgments.
As its first point on appeal, Hunzinger maintains that the trial court erred in granting partial summary judgment in favor of Quarles & Brady on its claim that the firm negligently failed to tender a defense to Hunzinger's insurance company. Hunzinger's complaint alleges that, had the defense been tendered, the insurance company would have undertaken the defense and would have paid a "vast majority" of the defense fees.[1] Prior to institution of the legal malpractice action, Hunzinger sued the insurance company for reimbursement of its attorney's fees in the Concordia litigation. Its complaint was dismissed on the ground that there was no insurance coverage because Concordia's suit was a breach of contract claim, which was not within the policy provisions. Our court affirmed the dismissal. In the instant case, in granting summary judgment in favor of Quarles & Brady on the legal malpractice claim, the court determined from a review of the policy and the Concordia complaint that the allegations of the complaint were not covered under the policy. Therefore, there was no duty for the firm to tender the defense to the insurance company.
While Hunzinger points out in its brief that the duty to defend is broader than the duty to indemnify, in order to activate the duty to defend, there must be facts alleged in the complaint which would create potential coverage under the insurance policy. See Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1306-07 (Fla. 1st DCA 1992). Hunzinger does not make the argument that the allegations of the complaint come within the coverage of the policy. Instead, it points to the fact that when the defense of one of the individual defendants was tendered to the insurance company sometime after the suit had been instituted, the insurance company paid fees, including those for representation *593 of the Hunzinger companies, while it investigated to determine if there was coverage. But the act of paying the fees does not show that there was coverage or that the complaint made allegations which came within the coverage. Nor did the payment of fees establish that the complaint's allegations raised the duty to defend. Thus, it does not establish that Quarles & Brady breached a duty of care. The existence of a duty is a question of law. See Scott v. Future Invs. of Miami, Inc., 559 So.2d 726, 727 (Fla. 4th DCA 1990). Here, the trial court determined that there was no duty owed to the client on the part of the lawyer to submit the defense to the insurance company, where the complaint did not allege any cause of action which arguably came within the coverage of the policy. We find no error in the trial court's ruling.
Hunzinger's second point on appeal involves the trial court's direction of a verdict in favor of Quarles & Brady on the remaining claims of malpractice. First, Hunzinger complains that the trial court denied it due process when it specified the procedure for presentation of the malpractice claims. At the time of trial, two allegations of malpractice remained in Hunzinger's complaint. The other claims had been dismissed as beyond the statute of limitations and reduced to offsets to Quarles & Brady's counterclaim for fees and costs due for the Concordia litigation. Based upon the order of the pleadings, the order of proof would have required Hunzinger to present evidence as to the two remaining allegations of malpractice in its complaint first. Quarles & Brady would then present its proof as to its fees and any defenses to Hunzinger's two malpractice claims. Hunzinger would then be entitled to present its defenses to the counterclaim for fees, including the dismissed claims of malpractice which would offset the fee claim. In their pretrial statement, the parties disputed whether Quarles & Brady would then be entitled to present a defense to the dismissed malpractice claims that were asserted as affirmative defenses. The trial court resolved this by changing the order of proof at trial. It required Hunzinger to initially present all of its claims of malpractice, even those relegated to affirmative defenses. Then Quarles & Brady could present its defense of the malpractice claims and prove up their claim for fees. Next, Hunzinger would be allowed to rebut Quarles & Brady's evidence. At trial, however, the trial court directed a verdict as to several of the claims which had been filed as offsetting affirmative defenses at the close of Hunzinger's presentation of its initial case. Hunzinger now claims that it was a denial of due process to direct a verdict because it prevented Hunzinger from presenting rebuttal testimony.
Although denominated affirmative defenses, Hunzinger's claims of legal malpractice were initially brought as independent causes of action and only relegated to the status of affirmative defenses because of the passage of the statute of limitations. Therefore, we do not understand Hunzinger's claim that by requiring it to prove these claims first it was somehow being compelled to anticipate the defendant's case and prove a defense to the defense. Had these claims been asserted in the order of the original pleadings filed by Hunzinger in the Second Amended Complaint, the proofs would have been presented in exactly the same manner as the trial court ordered. Hunzinger has not pointed to any specific evidence that it was prevented from using as a result of the order of presentation of evidence. The trial court has authority to regulate the introduction of evidence, and its discretion in this regard will not be interfered with unless clearly abused. See Parrish v. State, 90 Fla. 25, 105 So. 130, 132 (1925), disagreed with on other grounds by Swafford v. State, 533 So.2d 270, 274, n. 2 (Fla.1988). Here, the trial court acted to avoid juror confusion and fragmentation of the issues. Hunzinger had the opportunity to present its entire case of legal malpractice, *594 and it has failed to show how it was denied any opportunity to be heard. We therefore affirm.
As its next point for review, Hunzinger claims it was error for the trial court to direct a verdict on Hunzinger's claim of legal malpractice, which was based on Quarles & Brady's late filing of a mechanic's lien. In the Concordia litigation, the trial court held that the mechanic's lien was not timely filed. After judgment, Hunzinger filed an appeal but then settled the case before the appeal was completed. In the instant suit, on motion for a directed verdict, Quarles & Brady's attorney argued to the court that there was no malpractice because the attorney's advice regarding the filing of the lien was accurate. The reason that the trial court ruled adversely to Hunzinger in the Concordia litigation was because it made a factual finding that Hunzinger had ceased diligent work on the building earlier than Hunzinger had claimed. In addition, Quarles & Brady argued that by settling the case and not continuing with the appeal, Hunzinger abandoned any claim for malpractice in the underlying litigation. The lawyers argued both issues, and the trial court simply granted the motion without specifying on which rationale the directed verdict was granted.
On appeal, Hunzinger argues that the trial court erred in concluding that the failure to pursue the prior appeal constituted an abandonment of the legal malpractice claim. In Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990), the court noted that the majority of districts had held that "a cause of action for legal malpractice does not accrue until the underlying legal proceeding has been completed because, until that time, one cannot determine if there was any actionable error by the attorney." However, the cases cited by the supreme court do not mandate an exhaustion of remedies or compel the filing of an appeal. For instance, in Zakak v. Broida & Napier, P.A., 545 So.2d 380, 381 (Fla. 2d DCA 1989), the court said, "when a cause of action for legal malpractice is predicated on errors or omissions committed in the course of litigation, the statute of limitations does not begin to run until that litigation is concluded by final judgment, or if appealed, until a final appellate decision is rendered." (emphasis supplied); see also Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). Similarly, in Haghayegh v. Clark, 520 So.2d 58 (Fla. 3d DCA 1988), an appeal was filed from an adverse judgment to the third district which affirmed the judgment. The appellants then filed a malpractice action against the attorney whose defense was that the two year limitations period for bringing the action had expired. While the trial court dismissed the case, the third district reversed, finding that the period did not commence until the termination of the appeal in the underlying case. See id. at 59. In each of the other cases cited in Peat, Marwick, an appeal had been filed and was being pursued so that no final determination could be made that redressable harm had occurred until the termination of the proceedings on appeal. However, in Peat, Marwick, similar to the facts of this case, taxpayers relied on the advice of their accountants in preparing their tax returns, and the IRS subsequently served them with a notice of deficiency. They were advised to appeal the notice to the United States Tax Court, which they did. During the pendency of that action, the taxpayers stipulated with the IRS as to the deficiency owed and then sued their accountants. Thus, much as Hunzinger did in this case, the taxpayers in Peat, Marwick did not pursue the underlying action to an ultimate judicial determination. Instead, they settled the action and then sued for malpractice.
In Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611-12 (Fla. 4th DCA 1997), then Judge Pariente explained:
[t]he principle of Peat, Marwick does not mean that in every case involving attorney malpractice, the dismissal or *595 settlement of a related case, or the failure to take an appeal of the underlying lawsuit, will automatically translate into an inability to establish redressable harm.
The circumstances in which a client's subsequent actions constitute an abandonment of a legal malpractice claim, as a matter of law, are very narrow. See Segall v. Segall, 632 So.2d 76 (Fla. 3d DCA 1993); Pennsylvania Ins. Guar. Ass'n v. Sikes, 590 So.2d 1051, 1053 (Fla. 3d DCA 1991). For example, in Sikes it was determined, as a matter of law, that the client's loss resulted from judicial error occasioned by the attorney's curable, nonprejudicial mistake that "in all likelihood" would have been corrected on appeal. 590 So.2d at 1053. Thus, the failure to pursue the appeal was held to constitute abandonment as a matter of law. Id.

In declining to adopt a bright-line rule, the third district had cautioned that:
[o]ur cases should not be read to require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final appellate determination of the underlying case before asserting a claim for legal malpractice. The test for determining when a cause of action for attorney malpractice arises remains when `the existence of redressable harm has been established.' Diaz v. Piquette, 496 So.2d 239, 240 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1042 (Fla.1987). In some cases, redressable harm caused by errors in the course of litigation can only be determined upon completion of the appellate process. In other cases, the failure to obtain appellate review should not bar an action for malpractice.
Segall, 632 So.2d at 78 (citations omitted).
In the instant case, we cannot say, as the court could in Sikes, that the mistake in the original proceedings would "in all likelihood" have been corrected on appeal. The issue in the instant case involved whether the work being done within ninety days of the filing of the mechanic's lien was inconsequential work for the correction of defects or was being performed pursuant to the terms of the contract. The trial court had ruled that it was the former, and generally such factual issues are for the determination of the trier of fact. See Aronson v. Keating, 386 So.2d 822, 823 (Fla. 4th DCA 1980). Thus, we cannot say that the trial court's ruling most likely would have been reversed had the appeal gone its course. To the contrary, reversal on factual issues is most uncommon. Therefore, we hold that the legal malpractice claim was not abandoned by the termination of the appeal in the Concordia litigation and that, similar to the stipulated judgment in Peat, Marwick, the settlement of the case on appeal marked the date on which redressable harm occurred.
In the instant case, Hunzinger's construction law expert testified that a reasonably competent attorney would have filed the claim of lien within ninety days of the issuance of the certificate of occupancy, even with the existence of punch list items to be corrected. He explained that the punch list items could be considered correction of defects, or simply remedial repair after "final furnishing of labor or services or materials by the lienor." § 713.08(5), Fla. Stat. (1995). Thus, in his opinion a reasonably competent attorney would file within ninety days of the certificate of occupancy. This was sufficient to overcome a motion for directed verdict. We disagree with Quarles & Brady that the expert's opinion could be ignored because it was at odds with both the statute and the Concordia construction contract.[2] *596 We therefore reverse the directed verdict on the issue of the claim of lien. We affirm the remaining claims of error with regard to the other directed verdicts entered by the trial court.
Hunzinger also complains that the trial court erred in giving several jury instructions. First, it contends that the court committed error by revealing to the jury that directed verdicts were previously granted prior to telling the jury what claims they would ultimately deliberate and resolve. The basis of this contention is that because these claims were actually "affirmative defenses" under the pleadings, they were given in the wrong order. However, because we have affirmed the trial court on its determination to reorder the presentation of the issues, we also affirm the reordering of the jury instructions.
On the other hand, giving some of the specific jury instructions was error. Instruction Numbers 7 and 10 comment on evidence. The latter part of instruction 10 appears to be for the purpose of discouraging the jury from speculating on some theory that was never even alleged. Commenting on the evidence, or lack thereof, is improper. Cf. Sirmons v. Pittman, 138 So.2d 765 (Fla. 1st DCA 1962). We also find that instruction 14 was not a neutral statement of the law to be applied to the case. Furthermore, instruction 17 was a negative charge, which should be avoided. See Fla. Std. Jury Instr. (Civ.), General Note on Use, p. xxi.[3] Instruction number 18 was irrelevant to the case after the court granted a directed verdict on the statute of limitations defense as to the failure to file a timely claim of lien. On retrial, however, we have already determined that the failure to pursue the appeal to correct this matter would not "in all likelihood" have been corrected on appeal. Therefore, the issue on this point will be whether the delay in filing the claim of lien was malpractice or a proper exercise of judgment on the part of the attorney given the facts known to him. Finally, we agree that, on the whole, the instructions given in this case were not balanced but tended to favor Quarles & Brady's position. Many of these charges should have been the subject of argument by the attorneys rather than instructions by the court.
With respect to the court's denial of the motion for directed verdict on damages regarding the claim of negligence in the drafting of the Supreme Lumber settlement agreement, we agree with appellant that the trial court erred in failing to grant a new trial on damages. As a result of Hunzinger's disputes with Concordia regarding the project, Hunzinger was unable to pay its subcontractors, including Supreme Lumber. Supreme Lumber's lawsuit was one of the actions resolved by settlement stipulation. The agreement provided in part that Hunzinger agreed to pay Supreme, after receipt of payment from the owner (Concordia), in accordance with a schedule whereby Supreme would recover a percentage of Hunzinger's recovery above $500,000. The agreement also gave Supreme the authority to veto any settlement with Concordia which would not provide it with at least $50,000. In the Concordia final judgment, the trial court awarded Hunzinger $880,000, but set it off against the $1.5 million which it found Hunzinger owed Concordia. Therefore, Hunzinger had a net judgment against it. Nevertheless, in the Supreme Lumber litigation the trial court concluded that Hunzinger's set off amount of $880,000 constituted a "recovery" and therefore, Supreme was entitled to a final judgment under the settlement agreement of $63,000.
*597 Among the malpractice claims brought against Quarles & Brady, Hunzinger claimed that the firm negligently prepared the settlement agreement with Supreme by drafting a stipulation which required payment to Supreme even if they did not receive a positive recovery in the Concordia litigation. After presentation of the evidence, Hunzinger moved for a directed verdict on damages, arguing that because the drafting error resulted in a judgment against it in the Supreme Lumber case of $63,000, damages in that amount were undisputed in the evidence, and it was entitled to a verdict as a matter of law. The trial court denied the motion.
In reviewing a trial court's grant or denial of a motion for directed verdict, an appellate court must evaluate the evidence in the light most favorable to the non-moving party. See Asplundh Tree Experts, Inc. v. Mason, 693 So.2d 44, 45 (Fla. 1st DCA), rev. denied, 699 So.2d 1374 (Fla.1997) (quoting Floyd v. Video Barn, Inc., 538 So.2d 1322 (Fla. 1st DCA 1989)). A directed verdict should only be granted where there is no evidence upon which a jury could properly rely for finding for the nonmoving party. See Collins v. School Bd. of Broward County, 471 So.2d 560, 563 (Fla. 4th DCA 1985), writ dismissed by School Bd. of Broward County v. District Court of Appeal, Fourth Dist., 491 So.2d 280 (Fla.1986).
In this case, the drafting error resulted in the court's determination in the Supreme Lumber litigation that, even though Hunzinger received no net recovery, Supreme could recover at least the scheduled amount of the set-off Hunzinger was entitled to in the Concordia litigation. That amount was $63,000, and the negligent drafting error resulted in a judgment against Hunzinger for that amount. Although appellee claims that Hunzinger breached the settlement agreement by later settling with Concordia without Supreme's permission, that occurred after the entry of the $63,000 judgment. But for Quarles & Brady's negligence in drafting the settlement agreement, the trial court in the Supreme Lumber litigation would not have construed the appellant's set-off in the Concordia litigation as a recovery. Any subsequent breach of the stipulation agreement by Hunzinger appears irrelevant to the award to Supreme Lumber. Thus, the amount of the judgment against Hunzinger for $63,000 constituted the damages suffered as a result of Quarles & Brady's negligence. The trial court erred in denying Hunzinger's motion for directed verdict. As the jury found liability on this malpractice claim, we reverse and remand for direction of a verdict of $63,000 in Hunzinger's favor on that issue.
As to those issues which we did not address in this opinion, we find no error.
We reverse the final judgment and remand for a new trial on the issue of Hunzinger's claim of legal malpractice on the filing of the claim of lien, as well as the two remaining claims of malpractice submitted to the jury and decided in Quarles & Brady's favor. Because there was no claim of error as to the jury's determination of the amount of Quarles & Brady's attorney's fees, and that issue is not integrally intertwined with the issues on which we reverse, there is no need for that issue to be retried. We also reverse the order on attorney's fees and costs without prejudice to reconsider the same after conclusion of this action.
Affirmed in part; reversed in part and remanded for further proceedings.
SHAHOOD and TAYLOR, JJ., concur.
NOTE: TAYLOR, J., did not participate in oral argument, but has had the opportunity to review the entire proceedings.
NOTES
[1] On appeal, we note that Hunzinger now claims that the insurance company probably would have paid only a small part of those costs.
[2] At trial, Quarles & Brady argued that simply because they construed the contract and timing requirements one way, and the trial judge simply disagreed with their interpretation, they could not be held liable based on a mere disagreement on a fairly debatable issue. We construe Hunzinger's expert's testimony as saying that in such lien timing decisions it is not reasonably competent to delay the filing of the lien for the punch list items for the very reason that a trial court may determine that the final performance of work was on an earlier date, and the punch list items were merely inconsequential and remedial.
[3] It is also not supported by the citations given for it in the Defendant's Proposed Instructions.