962 So.2d 997 (2007)
Martha C. HAMILTON, Appellant/Cross-Appellee,
v.
Claude W. TANNER, Appellee/Cross-Appellant.
No. 2D06-1709.
District Court of Appeal of Florida, Second District.
August 8, 2007.
*999 J. Stanford Lifsey, Tampa, for Appellant/Cross-Appellee.
David A. Townsend of Townsend & Brannon, Tampa, for Appellee/Cross-Appellant.
FULMER, Judge.
Martha C. Hamilton appeals the trial court's award of lease damages to Claude W. Tanner. We reverse because the statute of limitations precludes the award. Mr. Tanner cross-appeals the court's failure to award him additional damages that, he alleged, arose from a holdover tenancy following the expiration of the lease. We affirm the trial court's denial of these damages.
On January 31, 1989, Claude W. Tanner, as lessor, and Ralph and Martha C. Hamilton, as lessees, entered into a commercial Lease-Option Agreement beginning October 25, 1988, and lasting until October 24, 1994, with monthly rent set at $1300. The agreement also made the Hamiltons liable for sales taxes and real property taxes.[1] The property was a funeral home.
On September 4, 2002, Mr. Tanner filed a Complaint and on December 22, 2004, an Amended Complaint. Mr. Tanner alleged that the Hamiltons became holdover tenants at the expiration of the lease term in 1994 and that they abandoned the property in July 2002. He alleged that the Hamiltons owed him $144,454.11 in unpaid rent and related charges, encompassing both the lease term and the postexpiration period. Ralph Hamilton died in May 2005, and on May 26 Mr. Tanner voluntarily dismissed the case as to Ralph Hamilton and his estate. On August 25, 2005, Mrs. Hamilton filed an amended counterclaim, whose specific claims are not at issue here.[2] Mrs. Hamilton acknowledged the existence of the lease agreement, alleged that the Hamiltons had occupied the property "pursuant to the Lease" through the 1994 expiration date, and acknowledged that they had remained in the property "under the same terms and conditions" after the termination of the lease agreement in 1994.
The case was tried before the court in February 2006. The court entered a final judgment against Mrs. Hamilton for lease damages in the amount of $56,130.10, corresponding to the amount still owing for rent and taxes that had accrued during the term of the lease agreement, less $1300 as stipulated by the parties. Although the court in its written order did not specify how it arrived at its total, the total is consistent with the court's oral ruling that Mrs. Hamilton was liable for only the back rent and taxes due that had accrued during the term of the lease agreement. The court awarded no damages to Mr. Tanner for rent and taxes that had accrued during the postexpiration period. In its oral ruling, the court explained that any damages owing for the postexpiration period were not Mrs. Hamilton's responsibility because *1000 the arrangement that existed after the lease expired was between Mr. Tanner and Mr. Hamilton, who had died and been voluntarily dismissed, but not Mrs. Hamilton. Mrs. Hamilton appeals the award of lease damages, and Mr. Tanner cross-appeals the court's denial of additional damages for rents and taxes that accrued during the postexpiration period.
Mrs. Hamilton's appeal
Mrs. Hamilton's appeal concerns the trial court's award of damages to Mr. Tanner for unpaid rents and taxes that accrued during the term of the lease agreement. Mrs. Hamilton argues that the statute of limitations as to an action on the lease agreement is five years, § 95.11(2)(b), Fla. Stat. (2002), and that the statute began to run upon the expiration of the agreement on October 24, 1994; as a result, the statute expired well before the lawsuit was filed in September 2002. Mr. Tanner argues that several rent checks signed by Mrs. Hamilton in 2000-2002 "rejuvenated" the statute of limitations.
A legal issue surrounding a statute of limitations question is an issue of law subject to de novo review. See Chrestensen v. Eurogest, Inc., 906 So.2d 343, 344 (Fla. 4th DCA 2005). The relevant law as it relates to leases is well summarized as follows:
A cause of action on a contract accrues and the limitations period commences atthe time of the breach. Lease agreements require installment payments, and each failure to pay an installment constitutes an individual breach. Courts in numerous Florida cases have reiterated the general rule that when there has been a breach, abandonment, or renunciation of a lease before the expiration of the term, the lessor has three options. The lessor may (1) treat the lease as terminated and retake possession for the lessor's purposes; (2) hold possession for the lessee's account, in which case the lessee is responsible for any difference between the rent obligation and amounts the lessor recovers by reletting the premises; or (3) stand by and do nothing and sue the lessee as each installment of rent matures, or sue for all the rents due when the lease expires.
Holiday Furniture Factory Outlet Corp. v. State, Dep't of Corrections, 852 So.2d 926, 928 (Fla. 1st DCA 2003) (citations omitted; emphasis added); see also Greene v. Bursey, 733 So.2d 1111, 1114 (Fla. 4th DCA 1999) ("Ordinarily, the statute of limitations under an installment contract starts to run on the date each payment becomes due. As such, the statute of limitations may run on some installments and not others." (Citations omitted.)). In Holiday Furniture, the commercial lessor opted to sue for all rents due when the lease expired. The court held that the lessor "was entitled to sue [the lessee] for all of the unpaid installments, and the statute of limitations bars recovery only of those installments due over five years before [the lessor] filed suit on December 28, 2001." 852 So.2d at 928.
Here, commercial lessor Mr. Tanner also chose to sue after the lease agreement's expiration date of October 24, 1994, filing his initial complaint on September 4, 2002, almost eight years postexpiration. According to the lease agreement, monthly payments were due in advance on the twenty-fifth of the month. Hence, the last payment due during the lease term was that of September 25, 1994. Mr. Tanner could have sued against this installment, assuming that it had not been paid by the Hamiltons, at the latest on September 25, 1999. See § 95.11(2)(b) (providing that an action on an obligation founded on a written instrument has a statute of limitations of five years); Holiday Furniture, 852 So.2d 926. For successive earlier installments, the statute of limitations expired *1001 one month earlier, and so on. As such, we must conclude that the statute of limitations precludes a claim against Mrs. Hamilton for any rents and taxes due under the October 1988October 1994 term of the lease agreement.
In reaching this conclusion, we also point out that Mr. Tanner's rejuvenation argument is unavailing. Mr. Tanner argues that Mrs. Hamilton, by writing three monthly checks in 2000-2002, ratified her contractual obligation under the written lease agreement. To the extent that "[l]ease agreements require installment payments, and each failure to pay an installment constitutes an individual breach," Holiday Furniture, 852 So.2d at 928, Mrs. Hamilton's writing of a check for the January 2000 rent and tax payment, for example, did not somehow resurrect her obligation to make payments for each unpaid monthly rent and tax obligation of the 1988-1994 lease term.[3]
Because Mr. Tanner's claim as to lease term rents and taxes is barred by the statute of limitations, we reverse the court's award of $56,130.10 in lease damages.
Mr. Tanner's cross-appeal
In his cross-appeal, Mr. Tanner challenges the trial court's denial of a damages award for unpaid rent and taxes that accrued after the expiration of the lease while the Hamiltons continued to occupy the property. The resolution of this issue depends on the specific nature of the arrangement under which the Hamiltons remained on the property. Mr. Tanner argues that the Hamiltons were "holdover tenants," that is, tenants at sufferance, and therefore obligated to abide by the terms of the original lease agreement. Mrs. Hamilton argues that the Hamiltons remained in the property under an oral lease agreement between her late husband (but not her) and Mr. Tanner, such that she is not liable for postexpiration rents and taxes.
Mr. Tanner relies on section 83.04, Florida Statutes,[4] which reads:
Holding over after term, tenancy at sufferance, etc.  When any tenancy created by an instrument in writing, the term of which is limited, has expired and the tenant holds over in the possession of said premises without renewing the lease by some further instrument in writing then such holding over shall be construed to be a tenancy at sufferance. The mere payment or acceptance of rent shall not be construed to be a renewal of the term, but if the holding over be continued with the written consent of the lessor then the tenancy shall become a tenancy at will under the provisions of this law.
Mr. Tanner argues that whatever the postexpiration oral arrangement that existed between the parties may have entailed, there was no written renewal of the lease agreement. Therefore, he argues, pursuant to section 83.04, the postexpiration arrangement between the parties was a tenancy at sufferance. Furthermore, "the tenancy arising from the tenants holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease so far as they are applicable to the new tenancy." Wingert v. Prince, 123 So.2d 277, 279 (Fla. 2d DCA 1960) (citing Rosamond v. Mann, 80 So.2d 317 (Fla.1955)). As such, Mr. Tanner argues, Mrs. Hamilton is liable for unpaid rent and taxes that accrued during *1002 the postexpiration period because the terms of the original lease agreement, which Mrs. Hamilton had signed, still applied. Essentially, Mr. Tanner is arguing that the statutory tenancy at sufferance should supersede any oral arrangement that may have been reached between the parties.[5]
Mrs. Hamilton argues that the arrangement under which the Hamiltons remained in the commercial property after the expiration of the lease agreement was an oral lease between her husband and Mr. Tanner to which she was not a party. Various portions of the testimony presented at trial support an oral arrangement either between both Hamiltons and Mr. Tanner, or between Mr. Hamilton alone and Mr. Tanner. In its oral findings at the end of the trial, the court resolved the inconsistency in a somewhat indirect way, finding that any arrangement that may have existed postexpiration was between Mr. Hamilton and Mr. Tanner but did not involve Mrs. Hamilton:
Mr. Hamilton may have agreed to a lot of things, but there is no evidence that [Mrs. Hamilton] agreed to anything other than the obligations under this lease for this term of time. . . .
From [the expiration of the lease agreement] on, it was between Mr. Hamilton and Mr. Tanner as far as I know, and [Mr. Tanner] filed a voluntary dismissal as to Mr. Hamilton, and that ended any obligation he had. . . .
I'm not holding [Mrs. Hamilton] responsible for any agreement that may have been reached between Mr. Hamilton and Mr. Tanner subsequent to [the expiration of the lease agreement].
The trial court's findings raise two issues: whether there actually was an oral lease between Mr. Hamilton and Mr. Tanner and, if so, whether the existence of an oral lease, as opposed to a written instrument, took the tenancy out of section 83.04 such that Mrs. Hamilton did not become a tenant at sufferance. "[A]n oral agreement to occupy property and to pay rent in return qualifies as a `lease[.]'" Keeton Corr., Inc. v. RJ & RK, Inc., 858 So.2d 349, 351 (Fla. 1st DCA 2003).[6]
*1003 The testimony on which the trial court apparently relied in determining that there was an arrangement between only Mr. Hamilton and Mr. Tanner included the following portions of the cross-examination of Mr. Tanner by Mrs. Hamilton's counsel:
Q. But you didn't [request surrender of the premises] in October of '94, did you
A. No, because
Q.  at the end of the lease?
A.  we had an oral agreement. Unfortunately, I'm from the school that my word is my bond. Okay? A handshake to me is everything. And when Ralph Hamilton was alive and when he was in his right frame of mind, if he said something, buddy, it was the law. Okay? And that's the way we operated. Okay? So law or no law, I'm telling you the truth.
. . . .
Q. And the rent that you say is owed you is based upon this lease option agreement or yoursome type of verbal agreement between you
A. Yes.
Q.  and Ralph [Hamilton]?
A. Yes.
Q. And that verbal agreement we don't know what it is, or do we?
A. Yes. I know.
Q. What is your understanding of the verbal agreement?
A. He would pay me my rent on time. He would pay the taxes for the property, and he could haveand have full lease of the property.
Q. So this was the agreement between you and Ralph to pay the rent on time and to pay the taxes.
A. Yes, sir, as long as he was in the property using the property.
Additionally, in answer to a question as to whether she had made any agreement with Mr. Tanner after the expiration of the lease, Mrs. Hamilton testified that she and Mr. Tanner never spoke about business at all.
Although the trial court failed to make a definitive ruling as to the existence of an oral lease, in light of the testimony quoted above and the documentary evidence received by the court, we conclude that the only evidence on which the court could have relied to determine that "any agreement" was between Mr. Hamilton alone and Mr. Tanner compels us to conclude that the trial court made an implicit finding that the arrangement was an oral leasean "oral agreement to occupy property and to pay rent in return," Keeton Corr., 858 So.2d at 351. We also conclude that Mr. Tanner's testimony makes clear that Mr. Hamilton continued to operate his business on the leased premises not as a holdover tenant but rather pursuant to an oral agreement between Mr. Tanner and Mr. Hamilton. The trial court's finding that Mrs. Hamilton was not a party to this oral agreement and, therefore, has no legal obligation under the agreement is fully supported by Mr. Tanner's testimony. Mr. Tanner's testimony that he was operating under an oral lease with Mr. Hamilton alone forecloses his claim that the tenancy was a holdover under section 83.04 such that Mrs. Hamilton is liable for any unpaid rent as a tenant at sufferance. And, Mr. Tanner's decision to forego pursuing his claim against the party who agreed to pay the rent, Mr. Hamilton via his estate, does not give rise to any obligation on Mrs. Hamilton's part. The trial court's denial of damages to Mr. Tanner relative to the postexpiration period must therefore be affirmed.
In conclusion, we reverse the $56,130.10 damages award to Mr. Tanner, and we *1004 affirm the trial court's denial of damages to Mr. Tanner for rent and tax payments that accrued during the period following the expiration of the lease.
Reversed in part and affirmed in part.
SILBERMAN and LaROSE, JJ., concur.
NOTES
[1] Sales taxes were payable to Mr. Tanner along with rent. The Hamiltons were responsible for paying real property taxes on their own, but Mr. Tanner apparently made the payments and had, or attempted to have, the Hamiltons reimburse him. The terms of the agreement related to the purchase option are not relevant here.
[2] This pleading was styled Second Amended Complaint and Counterclaim.
[3] Documentary evidence received by the court indicates that Mr. Tanner consistently applied rent checks received to the current month, not to past months for which rent had not been paid.
[4] The text of section 83.04 is the same for all years relevant to this case.
[5] Mr. Tanner also argues that Mrs. Hamilton should be bound by her pleadings. In her counterclaim, quoted above, Mrs. Hamilton acknowledged that "[Mr. Tanner] and Defendants entered into the oral agreement." At trial, however, Mrs. Hamilton proceeded on a theory that only Mr. Hamilton entered into the oral agreement with Mr. Tanner. In our review of the record we could not locate any statement of objection by Mr. Tanner to this change of theory, and Mr. Tanner does not identify such an objection in his brief. In the absence of an objection, Mrs. Hamilton was permitted to attempt to demonstrate the validity of the theory. See Fla. R. Civ. P. 1.190(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. . . ." (Emphasis added.)); Woodard v. Armenian Cultural Ass'n of Am., 724 So.2d 669, 671 (Fla. 4th DCA 1999) (plaintiff adduced evidence at trial that she was not standing on defendant's property after alleging in the complaint that she was; because the defendant "failed to object to this evidence on the basis that it was outside the scope of the pleadings, the parties tried the issue by implied consent and the amendment of the . . . complaint was not necessary").
[6] An oral lease, of course, raises the possibility of the Statute of Frauds. However, "an oral lease pursuant to which rent is payable monthly is deemed to be a month-to-month tenancy at will. § 83.01, Fla. Stat. (1997). Such a lease does not violate the statute of frauds merely because it continues in effect for more than a year." Mangum v. Susser, 764 So.2d 653, 655 (Fla. 1st DCA 2000).