992 So.2d 309 (2008)
TECHNICAL PACKAGING, INC., Appellant,
v.
Richard HANCHETT and Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Appellees.
No. 2D06-3851.
District Court of Appeal of Florida, Second District.
September 26, 2008.
Rehearing Denied September 26, 2008.
*310 Warren R. Trazenfeld, P.A., Miami, and Patrice A. Talisman of Hersch & Talisman, P.A., Coconut Grove, for Appellant.
F. Wallace Pope, Jr., of Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater, for Appellees.
FARNELL, CROCKETT, Associate Senior Judge.
Technical Packaging, Inc. ("Technical Packaging" or "Technical"), sued its former attorney Richard Hanchett and Hanchett's firm, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. ("Trenam"; collectively, "Hanchett/Trenam"), for legal malpractice. The trial court granted Hanchett/Trenam's motion for summary judgment, ruling that Hanchett/Trenam had prevailed on its defense of abandonment. We reverse.

Background
Technical Packaging sold cellophane cigar tubes. In the late 1990s its cellophane supplier was UCB Films, Inc. ("UCB"). Technical ordered cellophane from UCB on approximately thirty-five occasions during this period, with each order reflected in its own set of documents. At some point Technical's customers began complaining about defects in cigar tubes that had not existed when Technical was purchasing cellophane from its previous supplier. Technical claimed that UCB's allegedly defective cellophane was delivered between December 1996 and May 1998.[1] Technical lost a significant amount of money. Trenam, which had had a long-term attorney-client relationship with Technical, assisted Technical in defending claims made by its customers; Hanchett was assigned to represent Technical. In March 2000, Technical consulted with Trenam about the possibility of suing UCB on a contingency-fee basis. After Trenam declined to undertake this representation in the summer of 2001, Technical hired another law firm and filed a complaint against UCB on March 3, 2003. UCB removed the suit to the federal Middle District of Florida. Technical's complaint recited eight causes of action, only one of whichbreach of contractforms the basis of the issue in the instant appeal. UCB pleaded statute of limitations as a defense and prevailed on its motion for *311 summary judgment, with the court ruling that a four-year statute applied to all of Technical's claims, making the lawsuit untimely. The four-year period applied to the breach-of-contract claim because, the court ruled, the Technical-UCB sales agreements were oral contracts. See § 95.11(3)(k), Fla. Stat. (2002) (providing that "[a] legal or equitable action on a contract . . . not founded on a written instrument, including an action for the sale and delivery of goods" entails a four-year limitations period). Technical did not appeal the judgment.
The gist of the present malpractice action is that during the consultations leading to Trenam's declining to represent Technical Packaging in a lawsuit against UCB, Hanchett allegedly gave Technical incorrect dates for the termination of limitations periods; as a result, Technical's March 2003 suit against UCB was untimely filed. For its part, Hanchett/Trenam raised several defenses, including abandonmentthat is, that Technical, by not appealing the adverse judgment in the underlying lawsuit and winning a reversal, waived any malpractice claims against Hanchett/Trenam. Specifically, Hanchett/Trenam argued below and argue here that the federal district court erred in ruling that the agreements for the sale of cellophane from UCB to Technical were oral contracts, thus entailing four-year limitations periods. Hanchett/Trenam contend (as Technical did in the underlying lawsuit) that the sales agreements were written contracts entailing five-year limitations periods, see § 95.11(2)(b), and that Technical should have prosecuted an appeal based on that legal theory. Relying on the defense of abandonment, Hanchett/Trenam moved for summary judgment and prevailed on that ground. Technical appeals.

Discussion
This court reviews a final order of summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Estate of Githens v. Bon Secours-Maria Manor Nursing Care Ctr., Inc., 928 So.2d 1272, 1274 (Fla. 2d DCA 2006) (quoting Fla. R. Civ. P. 1.510(c)). Furthermore,
[i]n determining whether a genuine issue of material fact exists, this court must view every possible inference in favor of the party against whom summary judgment has been entered. It is the movant's burden to prove the nonexistence of genuine issues of material fact, and the burden of proving the existence of such issues is not shifted to the opposing party until the movant has successfully met his burden.
Id. (citations and quotation marks omitted).
We begin by noting that the elements of legal malpractice that the plaintiff must prove are: (1) the employment of the attorney, (2) the lawyer's neglect of a reasonable duty, and (3) the attorney's negligence as the proximate cause of loss to the client. Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611 (Fla. 4th DCA 1997). Further, the Florida Supreme Court in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), pointed out that "[a] clear majority of the district courts have expressly held that a cause of action for legal malpractice does not accrue until the underlying legal proceeding *312 has been completed on appellate review because, until that time, one cannot determine if there was any actionable error by the attorney." Id. at 1325 (citations omitted).
If the principle of "complet[ion] on appellate review," id., were required to be followed literally in all cases, then there would be no question that the trial court's granting of summary judgment to Hanchett/Trenam was correct, given that Technical did not appeal its loss in the underlying lawsuit. However, the generalization has been tempered:
Where a party's loss results from judicial error occasioned by the attorney's curable, nonprejudicial mistake in the conduct of the litigation, and the error would most likely have been corrected on appeal, the cause of action for legal malpractice is abandoned if a final appellate decision is not obtained. Pennsylvania Ins. Guar. Ass'n v. Sikes, 590 So.2d 1051 (Fla. 3d DCA 1991). . . .
. . . .
Our cases should not be read to require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final appellate determination of the underlying case before asserting a claim for legal malpractice. The test for determining when a cause of action for attorney malpractice arises remains when the existence of redressable harm has been established. In some cases, redressable harm caused by errors in the course of litigation can only be determined upon completion of the appellate process. In other cases, the failure to obtain appellate review should not bar an action for malpractice. We are unable to establish a bright-line rule that complete appellate review of the underlying litigation is a condition precedent to every legal malpractice action. To do so would, in many cases, violate the tenet that the law will not require the performance of useless acts.
Segall v. Segall, 632 So.2d 76, 78 (Fla. 3d DCA 1993) (quotation marks and most citations omitted; emphasis added); see also Hunzinger Constr. Corp. v. Quarles & Brady Gen. P'ship, 735 So.2d 589, 595 (Fla. 4th DCA 1999) ("The circumstances in which a client's subsequent actions constitute an abandonment of a legal malpractice claim, as a matter of law, are very narrow. . . . In the instant case, we cannot say, as the court could in [Pennsylvania Ins. Guar. Ass'n v.] Sikes, [590 So.2d 1051 (Fla. 3d DCA 1991),] that the mistake in the original proceedings would in all likelihood have been corrected on appeal." (internal quotation marks omitted; citations omitted)); Eastman v. Flor-Ohio, Ltd., 744 So.2d 499, 504 (Fla. 5th DCA 1999) ("Accordingly, the trial court in this case properly concluded that the park owner did not abandon its right to pursue a claim of legal malpractice against the law firm by voluntarily dismissing its appeal from the adverse judgment in the class action suit because that judgment was not likely to be reversed due to a finding of judicial error relating to the alleged claim of legal malpractice.").
The issue here, then, is whether Hanchett/Trenam could demonstrate under the summary judgment standard that an appeal by Technical of the federal district court's adverse judgment would in all likelihood have resulted in a reversal, with a ruling by the federal appeals court that the statute of limitations on an action for UCB's alleged breach of the Technical-UCB agreements was five years. There is, however, a threshold issue whose resolution, we conclude, largely moots the main issue: whether a reversal with such a ruling would have made any difference to Technicalthat is, whether even under a *313 five-year limitations period Technical's underlying lawsuit would have been too late.
The chronology urged by Hanchett/Trenam in support of its position that the federal district court erred is based on a letter from Technical's insurance carrier to Technical's counsel dated January 14, 2000, and stating that no formal claim had yet been made against Technical by its customers.[2] Hanchett/Trenam theorize that because any damages related to UCB's defective product would have come into existence sometime after this date, when actual complaints would have come in, and because the federal appeals court would have concluded that the statute of limitations was five years, Technical's underlying complaint would have been timely filedthat is, Technical had until January 2005 to file its complaint. Hanchett/Trenam's chronology is based on the following chain of reasoning: (i) a cause of action accrues when the last element constituting the action occurs, § 95.031(1), Fla. Stat.; (ii) a cause of action for breach of contract has three elements(1) a valid contract, (2) a material breach, and (3) damages, see, e.g., Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. 2d DCA 2006); (iii) here, the last element of the cause of action was damages, which occurred sometime after January 14, 2000, when Technical's customers apparently began complaining about the defective product originally made by UCB.
Notwithstanding the statutory "last-element" principle of section 95.031(1), however, Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach. See, e.g., Holiday Furniture Factory Outlet Corp. v. State, Dep't of Corr., 852 So.2d 926, 928 (Fla. 1st DCA 2003) (citing State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818 (Fla. 1996)). The parties do not dispute that, in the underlying action, the respective breaches occurred when the defective product was delivered from UCB to Technical. See, e.g., Forms & Surfaces, Inc. v. Welbro Constructors, Inc., 627 So.2d 594, 595 (Fla. 5th DCA 1993) ("An action for such a breach accrues, for venue purposes, where the allegedly defective or nonconforming goods were delivered.").[3]
*314 From the materials from the underlying lawsuit included in our record, it is reasonable to conclude that the Technical-UCB sales agreements were in fact written contracts. Given that causes of action for breach accrued during the December 1996May 1998 period, when the defective cellophane was delivered, the limitations period corresponding to the respective deliveries expired between December 2001 and May 2003. See § 95.11(2)(b). Because thirty-two of the thirty-five orders at issue were delivered before March 1998,[4] a lawsuit filed in March 2003 with respect to these deliveries was time-barred even under a five-year statute. In short, even if the federal appeals court had reversed with a ruling that the statute of limitations was five years, Technical was still too late in filing its original lawsuit as to the majority of its claims. As a result, Hanchett/Trenam failed to demonstrate abandonment with respect to these claims, and we must reverse the summary judgment at least in part.
With respect to the three remaining purchase agreementsthose whose deliveries were made in March 1998 or later, thus making a breach-of-contract claim timely under a five-year limitations periodthe analysis is complicated somewhat by the circumstance that the key fact about which there must be no genuine issue under the summary judgment standard happens to concern an issue of law: what the statute of limitations on the underlying contracts was.[5]See Hamilton v. Tanner, 962 So.2d 997, 1000 (Fla. 2d DCA 2007). The parties' briefs, especially that of Hanchett/Trenam, seem to reflect the view that if this court were to take it upon itself to rule on the limitations issue as if it were the appeals court available to Technical in the underlying lawsuit, the issue in the present appeal could be resolved. However, we are not persuaded that this is an appropriate role for this court where, as here, (1) the only issue urged by Hanchett/Trenam that in our view could potentially support a five-year limitations period appears to be one of first impression,[6] (2) the full record of the underlying lawsuit is *315 not before us, and (3) Hanchett/Trenam, the summary judgment movant and hence the party with the burden, has focused its argument on the "pure" legal issue without taking into account how an appeal by Technical would have proceeded in practice in light of Technical's averments (in pleadings, motions, etc.) in the underlying lawsuit.
We acknowledge that the parties have included in the record copies of a number of documents from the underlying lawsuit. However, "[a]n accurate and comprehensive record of the proceedings below is absolutely essential to fair and efficient appellate review." Haist v. Scarp, 366 So.2d 402, 404 (Fla.1978) (emphasis added). Here, we note the significant omission of most of the documents comprising the alleged written agreements, including those for the remaining three purchase orders, and we cannot be certain what other components of the record might be missing.
Furthermore, Hanchett/Trenam's failure to trace through those portions of the record in the underlying lawsuit that are included in the instant record and that might have affected the outcome of an appeal also leads us to conclude that we should decline the invitation to resolve the underlying legal issue. For example, our analysis, above, concerning the thirty-two alleged purchase agreements would have been that much simpler had our attention been brought to the following recitation by Technical in its "Plaintiff's Memorandum in Opposition to Motion for Summary Judgment," filed in the underlying lawsuit:
The [four] purchase orders placed during the five years preceding filing of this lawsuit were issued on April 7, 1998 . . ., May 5, 1998 . . ., and June 5, 1998. The statute of limitations for breach of a written contract is five years. Section 95.11(2)(b), Fla[.] Stat. The claim for breach of written contracts was filed within five years of these purchase orders and is therefore timely as to those written contracts.

(Emphasis added.) By averring that only the three[7] latest orders entailed five-year limitations periods, Technical was tacitly acknowledging that the earlier thirty-two orders were outside even the five-year limitations period for a breach-of-contract action. Any argument in an underlying appeal that a breach-of-contract claim as to these earlier contracts was within a five-year statute of limitations would not likely have been recognized by the federal appeals court. See, e.g., Gregory v. Missouri Pac. R.R. Co., 32 F.3d 160, 165 (5th Cir. 1994) ("Gregory cannot take one position before the district court and then take an inconsistent position here."); Ramming Real Estate Co. v. United States, 122 F.2d 892, 894 (8th Cir.1941) ("It is well settled that the theory upon which the case was tried in the court below must be adhered to on appeal."); see also Reserve Ins. Co. v. Pollock, 270 So.2d 469, 469 (Fla. 3d DCA 1972) ("We hold that defendant-appellant admitted its liability under the policy when it moved for arbitration, and it is estopped from taking an inconsistent position on this subsequent appeal."). Our point is that there may well be other matters relevant to a resolution of the statute of limitations *316 issue found in portions of the underlying lawsuit's record, matters that the parties have not identified or that are simply not available to us because the pertinent documents are not included in the instant record. We therefore do not address the underlying legal issue.
As to the remaining three alleged purchase agreements, then, we are forced to conclude that Hanchett/Trenam failed to demonstrate that they were entitled to summary judgment as a matter of law on their theory of abandonment, that is, that an appeal by Technical in the underlying lawsuit would in all likelihood have ended in Technical's favor.[8] We therefore reverse the order of the trial court.
Reversed.
CANADY, CHARLES T., Associate Judge, Concurs.
KELLY, J., Concurs in result only.
NOTES
[1] Hanchett/Trenam do not dispute this time range.
[2] Hanchett/Trenam propose an alternative chronology based on the federal district court's finding that Technical "strongly suspected" "by June 1998" that its problems were due to the cellophane. Thus, according to Hanchett/Trenam, the five-year limitations period lasted until June 2003, making Technical's March 2003 lawsuit timely. We reject this argument with only minimal discussion because the federal court was discussing Technical's fraud-in-the-inducement claim, which is not at issue here, and because Hanchett/Trenam cite no authority for their proposition that June 1998 must stand as the date of accrual for purposes of the instant lawsuit.
[3] Hanchett/Trenam argue that some of the cases really mean that a cause of action accrues when financial damages occur. However, they cite no cases in which damages became apparent after the breach and the court held that the cause of action accrued and the limitations period commenced when the damages occurred. On the contrary, some cases conclude that as of the breach at least nominal damages occur, such that the cause of action for breach of contract accrues then, even though actual damages occur later. See, e.g., Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000). Hanchett/Trenam cite to the dissent in Medical Jet, S.A. v. Signature Flight SupportPalm Beach, Inc., 941 So.2d 576, 579 (Fla. 4th DCA 2006) (May, J., dissenting), which calls for a more careful analysis of the breach-damages distinction in light of section 95.031(1), Florida Statutes. Medical Jet, 941 So.2d at 579-81. Nevertheless, at present the rule in Florida is that a cause of action accrues on a breach-of-contract action when the breach occurs.
[4] Hanchett/Trenam do not dispute this breakdown of delivery timing, asserted by Technical.
[5] Technical attempted to raise an issue of fact below by filing the affidavit of an appellate attorney. The entire substantive content of the affidavit was as follows:

5. I have reviewed the court file in [the underlying lawsuit]. I have analyzed all the filings in that matter including, but not limited to, the pleadings, affidavits, discovery responses, motions, memoranda, and the like.
6. It is my professional opinion that the well-reasoned Order of U.S. District Judge James Moody granting summary judgment to the Defendant in this matter, more likely than not, would have resulted in an affirmance by the United States Court of Appeals for the Eleventh Circuit, had the judgment been appealed [by Technical].
We agree with Hanchett/Trenam that these statements constitute a mere conclusory assertion that fails to raise a real issue of fact that would preclude summary judgment. See, e.g., Pino v. Lopez, 361 So.2d 192, 193 (Fla. 3d DCA 1978) (affirming a summary judgment when "[p]laintiff's affidavit in opposition to the motion for summary judgment was insufficient as a matter of law because it alleged conclusions of law without supporting facts"). We therefore cannot reverse on the basis of this argument urged by Technical.
[6] The issue can be summarized as follows: In the underlying lawsuit, Technical alleged and argued that although each of its purchase orders for cellophane was placed orally to UCB, the eventual exchange of documents (a purchase order and an invoice for each transaction) by the parties constituted written contracts. Hanchett/Trenam argue similarly in the present lawsuit. This view is consistent with Florida law, in particular its adoption of the Uniform Commercial Code. See generally § 672.201, Fla. Stat. (2002); 45 Fla. Jur.2d Sales and Exchanges of Goods § 31 (2007). The written documents contain no explicit warranties of quality. The issue, as framed by Hanchett/Trenam in one of its subarguments, is whether the statutory implied warranty of merchantability ("a warranty that the goods shall be merchantable is implied in a contract for their sale . . .," § 672.314(1)) enjoys the same five-year limitations period as the written contract itself, see § 95.11(2)(b), or entails a four-year period as a statutory liability, see § 95.11(3)(f), as Technical now urges. The parties have not identified a case that addresses this specific issue.
[7] In the underlying lawsuit, Technical alleged that four purchase orders were made after March 1998. In the instant lawsuit, Technical mentions only three of the four orders.
[8] We reject without comment Hanchett/Trenam's alternative basis for affirmance, that of judgmental immunity.