PER CURIAM.
Grove Isle Association, Inc., (the “Condominium Association”) appeals an order dismissing, with prejudice, its claims for injunctive and declaratory relief, unjust enrichment, and breach of contract based on the expiration of the applicable statute of limitations and the doctrine of laches. For the reasons set forth below, we reverse.[1]
I. FACTUAL AND PROCEDURAL HISTORY
Fair Isle, a private island in Coconut Grove, Florida, is developed with three residential condominium towers, collectively known as “Grove Isle,” and a hotel, club, marina, and spa. The towers were submitted to condominium ownership pursuant to a Declaration of Condominium recorded January 23, 1979 (the “Declaration”). The unit owners of each of the residential condominium towers are members of Grove Isle Association, Inc., an entity organized pursuant to Chapter 718, Florida Statutes.
Grove Isle unit owners and visitors access Fair Isle by way of a private bridge over Biscayne Bay. A roadway on Fair Isle permits traffic between the residential condominium towers and the hotel, club, marina, and spa. The private bridge and roadway are owned and/or controlled by Grove Isle Associates, LLLP (the “Hotel and Club Owner”), Grove Isle Yacht Club Associates (the “Marina Owner”), and CII Spa, LLC, the owner of a fifty percent interest in Grove Spa, LLC (the “Spa Owner”). The Declaration imposes the obligation to maintain and repair the private bridge and roadway upon the Condominium Association.
From 1996 through late 2008, the hotel and club were operated by Westgroup Grove Isle Associates, Ltd. (the “Former Hotel and Club Manager”). The marina and spa were managed by other entities during this time. In November 2008, Grove Hotel Partners, LLC (the “Resort Lessee”) leased the hotel, club, and spa property and assumed responsibility for the management and operation of these facilities (the “Resort”). The Resort Lessee manages and operates the Resort through Grand Heritage Hotel Group, LLC and its affiliate, GH-Grove Isle Management, LLC (collectively, the “Current Resort Managers”).
On July 10, 2009, the Condominium Association filed its Complaint against the Hotel and Club Owner, the Marina Owner, the Spa Owner, the Former Hotel and Club Manager, the Resort Lessee, and the Current Resort Managers.[2] The Con *1086 dominium Association’s Complaint asserted seven causes of action. The trial court’s order dismissing Counts I-VT is before us for review.[3]
In Count I, the Condominium Association sought injunctive relief against the Hotel and Club Owner, the Spa Owner, the Resort Lessee, and the Current Resort Managers (collectively, the “Count I Defendants”). The Condominium Association alleged that, pursuant to a final judgment entered July 29, 1977 (“Final Judgment”),[4] enjoyment of the club’s amenities (a restaurant and lounge, private banquet room, health spa, swimming pool, and tennis courts) was limited to members of the Condominium Association and their guests, members of the club and their guests, and registered hotel guests, and no separate memberships permitting use of the tennis courts were authorized. The Condominium Association sought an order prohibiting the Count I Defendants from allowing unauthorized members of the public to use the club’s amenities.
In Count II, the Condominium Association sought declaratory relief in the form of an order declaring Sections 3.2, 5.1,[5] and 15.4(c) and (d) of the Declaration[6] unfair, unreasonable, and unconscionable, and consequently, void and unenforceable, pursuant to sections 718.122 and 718.302, Florida Statutes. The Condominium Association alleged that these provisions of the Declaration give Fair Isle’s developer[7] *1087 an “unjust and undeserved advantage” over the Association and its members.
Section 3.2 of the Declaration recognizes that the private bridge, internal roadways, and amenities, among other things, “are utilized to provide services and other benefits to apartment unit owners and the Association.”
Therefore, apartments and the owners thereof within the condominium operated and managed by the Association shall be charged with the cost and expense of maintaining, managing and operating the various properties, facilities and services hereinabove described notwithstanding the fact that such properties, facilities and services are located or rendered outside the con-dominium_ The maintenance, management and operation of the described properties, facilities and services shall be the responsibility of the Developer or its successors or assigns. All costs and expenses incident to providing the maintenance, management and operation of the properties, facilities and services herein described shall be within the sole discretion of the Developer or its successors or assigns and shall be assumed and paid bg each apartment owner as a common expense.... Other owners of real property located on Fair Isle, their successors, assignees and lessees, including the Grove Isle Club, are not subject to contribute to the costs and expenses of maintaining, managing or operating the various properties, facilities and services ....
(Declaration § 3.2 (emphasis supplied).) The Condominium Association claims that Section 3.2 is unfair and unreasonable because it requires the unit owners to bear all the costs of maintenance, management, and operation of Fair Isle’s facilities and amenities, even though the facilities and amenities are also used by other Fair Isle property owners and persons other than members of the Condominium Association.
Section 5.1(d) of the Declaration reserves “a perpetual non-exclusive easement over, through, across and upon all walkways, driveways, ramps, parking spaces and other parking facilities” in favor of the developer and its successors and assigns. The provision also requires the developer (and its successors and assigns) to grant “perpetual non-exclusive rights to the use of the easement ... to owners and lessees of Fair Isle.” The Condominium Association claims that this provision is unfair and unreasonable because it requires the unit owners to bear all the costs of maintaining, managing, and operating these areas of Fair Isle, when the areas must be shared with other Fair Isle property owners.
Sections 15.4(c) and (d) limit the Condominium Association’s ability to amend the Declaration. Section 15.4(c) prohibits any amendment that would “[o]perate to alter, amend, modify or effect the rights and privileges granted to or reserved by the Developer without the written consent of the Developer.” Section 15.4(d) contains an identical provision running in favor of “Grove Isle Club.” The Condominium Association claims that these provisions “effectively preclude the Association from amending the Declaration to remove the onerous grants and reservations in favor of the Developer, its successors and assigns and the Grove Isle Club.”
In Count III, the Condominium Association asserted an action for unjust enrichment against the Hotel and Club Owner, the Marina Owner, and the Spa Owner, and sought to recover the value of its maintenance, management, and operation payments pursuant to Section 3.2 of the Declaration.
In Count IY, the Condominium Association sought declaratory relief related to *1088 Section 12.9 of the Declaration, which governs membership in the club. Section 12 imposes restrictions applicable to the condominium property and deemed to run with the land. Section 12.9 prohibits any “person, firm or corporation” from owning or leasing any unit in the condominium for a term of six months or more unless the person, firm, or corporation is a member of. the club. The Condominium Association claims this provision is unfair and unreasonable because membership in the club is at the discretion of the club’s directors; thus, Section 12.9 permits the club’s directors to control who may (and may not) own, lease, or sell a unit in the condominium. The Condominium Association demands an order declaring this restriction unfair and unreasonable and a restraint on alienation.
The Condominium Association also challenges Section 12.9(f) of the Declaration, which provides:
The total financial obligation for membership in the Grove Isle Club shall be the initial membership fee. The unit owners and the Association shall not be responsible for providing any costs and expenses for the maintenance, management and operation of the club facilities nor will such costs and expenses become an obligation of the unit owners or the Association unless provided for by an amendment to this Declaration adopted as required by Section 15 of this Declaration.
The Condominium Association contends that Section 12.9(f) prohibits the club from imposing and collecting annual assessments or dues from the unit owners, because the Declaration does not contemplate any additional membership fees other than the initial membership fee. The Condominium Association alleges that, notwithstanding Section 12.9(f), the club requires unit owners to pay annual assessments. These assessments are periodically increased. The Complaint alleges that the assessments are a product of the club’s “unique bargaining power,” i.e., the unit owners must agree to pay the assessments or risk expulsion from the club, which is a condition of ownership under Section 12.9 of the Declaration. With respect to Section 12.9(f), the Condominium Association seeks an order limiting the unit owners’ “total financial obligation” to an “initial membership fee” and declaring that the club is not authorized to assess annual membership fees or dues.
In Count V, the Condominium Association sued the Hotel and Club Owner for breach of contract, alleging an ongoing violation of Section 12.9(f) of the Declaration (which limits the “total financial obligation” of unit owners, with respect to club membership, to an “initial membership fee”). The Condominium Association seeks to recover annual club membership fees and dues paid by unit owners in excess of the initial membership fee.
In Count VI, the Condominium Association asserted an action for unjust enrichment against the Former Hotel and Club Manager, the Resort Lessee, and the Current Resort Managers. The Condominium Association seeks to recover the value of annual club membership fees and dues paid by the unit owners in excess of the “initial membership fee” provided for in Section 12.9(f) of the Declaration.
In Count VII, the Condominium Association sought injunctive relief against the Resort Lessee and the Current Resort Managers in the form of an order prohibiting the Count VII Defendants from generating excessive noise. Count VII remains pending in the trial court.
Following a hearing on motions to dismiss filed by the Defendants, the trial court dismissed the Condominium Association’s Complaint with prejudice, concluding *1089 that Counts I through VI were barred by the applicable statute of limitations and the common law doctrine of laches. The trial court reasoned that the Condominium Association’s claims accrued, at the earliest, in 1979 when the Declaration was recorded, or at the latest, “decades ago” at the time the Developer transferred control of the condominium to the Condominium Association. Because the applicable statute of limitations require claims founded on a written instrument to be commenced within five years, see § 95.11(2)(b), Fla. Stat., and claims for unjust enrichment to be commenced within four years, see Swafford v. Schweitzer, 906 So.2d 1194, 1195 (Fla. 4th DCA 2005), the Condominium Association’s claims were untimely. The trial court further concluded that the doctrine of laches barred the Condominium Association’s claims because it had knowledge of the claims since 1979 and, nevertheless, waited for almost thirty years to file them. The trial court dismissed the Complaint with prejudice, concluding that “any effort to amend or to provide a more definite statement would be futile.”
II. STANDARD OF REVIEW
A. Dismissal
A trial court’s order granting a motion to dismiss is reviewed de novo. Fla. Bar v. Greene, 926 So.2d 1195, 1199 (Fla.2006); GLK, L.P. v. Four Seasons Hotel Ltd., 22 So.3d 635, 636 (Fla. 3d DCA 2009); Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 206 (Fla. 3d DCA 2003); see also Fox v. Madsen, 12 So.3d 1261, 1262 (Fla. 4th DCA 2009) (“A legal issue surrounding a statute of limitations question is an issue of law subject to de novo review.” (quoting Hamilton v. Tanner, 962 So.2d 997, 1000 (Fla. 2d DCA 2007))).
A motion to dismiss tests the legal sufficiency of the complaint. Greene, 926 So.2d at 1199. In determining the merits of a motion to dismiss, the trial court must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party. Greene, 926 So.2d at 1199; Minor v. Brunetti, 43 So.3d 178, 179 (Fla. 3d DCA 2010) (reversing dismissal with prejudice where trial court considered facts other than those alleged in the complaint).
Affirmative defenses, such as statute of limitations and laches, are generally matters raised in an answer and not a motion to dismiss. Rigby v. Liles, 505 So.2d 598, 601 (Fla. 1st DCA 1987). However, where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the defense bars the action as a matter of law, a motion to dismiss raising the defense is properly granted. Saltponds Condo. Ass’n v. Walbridge Aldinger Co., 979 So.2d 1240, 1244-45 (Fla. 3d DCA 2008); Alexander v. Suncoast Builders, Inc., 837 So.2d 1056, 1057 (Fla. 3d DCA 2002). Because affirmative defenses may be avoided by facts pled in a reply, the allegations of the complaint must also conclusively negate the plaintiffs ability to allege facts in avoidance of the defense by way of reply or dismissal is inappropriate. Rigby, 505 So.2d at 601; Saltponds Condo. Ass’n v. McCoy, 972 So.2d 230, 231 (Fla. 3d DCA 2007).
B. Leave to Amend
A trial court’s order denying leave to amend a pleading is reviewed for abuse of discretion. Rodriguez v. Recovery Performance & Marine, LLC, 38 So.3d 178, 181 (Fla. 3d DCA 2010); Overnight Success Constr., Inc. v. Pavarini Constr. Co., *1090 955 So.2d 658, 659 (Fla. 3d DCA 2007); see also Gate Lands Co. v. Old Ponte Vedra Beach Condo., 715 So.2d 1132, 1135 (Fla. 5th DCA 1998).
“A trial court should give leave to amend a deficient complaint unless ... the complaint shows on its face that there is a deficiency which cannot be cured by amendment.” Unitech Corp. v. Atl. Nat’l Bank of Miami, 472 So.2d 817, 818 (Fla. 3d DCA 1985); see also Thompson v. Bank of N.Y., 862 So.2d 768, 770 (Fla. 4th DCA 2003) (quoting N. Am. Speciality Ins. Co. v. Bergeron Land Dev., Inc., 745 So.2d 359, 362 (Fla. 4th DCA 1999)); Fla. R. Civ. P. 1.190(a) (“Leave of court [to amend a pleading] shall be given freely when justice so requires.”).
III. DECLARATION OF CONDOMINIUM
A “declaration” or “declaration of condominium” is the instrument or instruments by which a condominium is created. § 718.103(15), Fla. Stat. (2012). “The declaration, which some courts have referred to as the condominium’s ‘constitution,’ strictly governs the relationships among the condominium unit owners and the condominium association.” Woodside Vill. Condo. Ass’n v. Jahren, 806 So.2d 452, 456 (Fla.2002). The powers of a condominium association include those set out in section 718.111, Florida Statutes (2012), and, except as expressly limited or restricted by the Condominium Act, those set forth in the declaration of condominium, the bylaws of the association, and the applicable provisions of the state corporations law. § 718.111(2), Fla. Stat. (2012); see also 10 Fla. Jur. 2d Condominiums & Coop. Apts. § 122(2012).
The powers of a condominium association do not appear to include the power to unilaterally void all or any portion of a declaration of condominium.[8] Rather, a declaration of condominium can generally be amended as provided in the declaration. § 718.110(l)(a), Fla. Stat. (2012). If the declaration fails to provide a method of amendment, it may be amended as to all matters, except those described in subsections (4) or (8) of section 718.110, if the amendment is approved by the owners of not less than two-thirds of the units. Id. Thus, “section 718.110 ... provides broad authority for amending a declaration of condominium.” Woodside Vill. Condo. Ass’n, 806 So.2d at 457. “Based upon this broad statutory authority and the provisions for amendment set out in the declaration of condominium, courts have recognized the authority of condominium unit *1091 owners to amend the declaration on a wide variety of issues ....” Id.
New unit owners purchase their units subject to the provisions of the declaration. Restrictions which may be found in a declaration of condominium are clothed with a very strong presumption of validity when challenged.[9] Woodside Vill. Condo. Ass’n, 806 So.2d at 457. This presumption arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed. Id. “Such restrictions are very much in the nature of covenants running with the land and they will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right.” Id. at 457 (quoting Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 639-40 (Fla. 4th DCA 1981)).
With respect to the effect of subsequent amendments, the Court in Woodside cited approvingly to this Court’s holding in Flagler Federal Savings & Loan Ass’n of Miami v. Crestview Towers Condominium Ass’n, 595 So.2d 198 (Fla. 3d DCA 1992), which reasoned that since unit owners were on notice of the recorded declaration’s provisions for amendments to the declaration when they purchased the unit, they were bound by the subsequent amendments to the declaration. Woodside Vill. Condo. Ass’n, 806 So.2d at 458-59. The Court in Woodside also cited approvingly to an appellate opinion from Illinois, Apple II Condo. Ass’n v. Worth Bank & Trust Co., 277 Ill.App.3d 345, 213 Ill.Dec. 463, 659 N.E.2d 93, 97-99 (1995), which concluded that when an amendment has been passed by an association’s membership it would be presumed valid and upheld unless it was shown that the restriction was arbitrary, against public policy, or in violation of some fundamental right. Woodside Vill. Condo. Ass’n, 806 So.2d at 459-60.
Furthermore, “although case law has applied the word ‘reasonable’ to determine whether [restrictions in a declaration of condominium] are valid, this is not the appropriate test _ Indeed, a use restriction in a declaration of condominium may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux.” Hidden Harbour Estates, Inc., 393 So.2d at 640.
Because a condominium association may not unilaterally void all or any portion of a condominium’s declaration, in order to successfully challenge the provisions of the declaration in a court of law, the association must show that the declaration’s provisions are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. See Hidden Harbour Estates, Inc., 393 So.2d at 640 (For an association to successfully attack the declaration in court, it needs to demonstrate that a provision of the declaration is “wholly arbitrary in [its] application, in violation of public policy, or that [it] abro *1092 gate[s] some fundamental constitutional right,” rather than that it is merely “unreasonable”). Otherwise, the only means by which a declaration of condominium may be amended is either as provided in the declaration itself, or if the amendment is approved by the owners of not less than two-thirds of the units.
IV. ANALYSIS
A. Dismissal Based on Statute of Limitations
The limitations periods applicable here are set forth in section 95.11, Florida Statutes, and discussed below. In Florida, the statute of limitations runs from the time the plaintiffs cause of action accrues. § 95.031, Fla. Stat. (2011). “A cause of action accrues when the last element constituting the cause of action occurs.” § 95.031(1), Fla. Stat. (2011).
1. Claim for Injunctive Relief (Count I)
In Count I, the Condominium Association sought an injunction prohibiting unauthorized members of the public from using the club’s amenities.
The limitations period for “[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument” is five years. § 95.11(2)(b), Fla. Stat. (2011); see also Pond Apple Place III Condo. Ass’n v. Russo, 841 So.2d 526, 527 (Fla. 4th DCA 2003) (applying five-year statute of limitations to action to enforce restrictive covenant prohibiting pets in condominium units). Thus, the Condominium Association may not assert any claims for injunctive relief that accrued before July 2004.[10] “To state a cause of action for injunctive relief, a plaintiff must allege ultimate facts which, if true, would establish (1) irreparable injury (that is, injury which cannot be cured by money damages), (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally.” Weekley v. Pace Assembly Ministries, Inc., 671 So.2d 220, 220 (Fla. 1st DCA 1996); see also Fayad v. Mercy Hosp., Inc., 773 So.2d 1244, 1244 (Fla. 3d DCA 2000).
The trial court concluded that “the violations of the settlement agreement in Count I necessarily have been occurring for approximately thirty years, since members began paying their membership dues in 1979.” (Order at 2.) However, the four corners of the complaint do not allege that the payment of membership dues by unit owners is related to use of the Club’s amenities by certain unauthorized members of the public, purportedly in violation of the Final Judgment. It is this injury — use by the unauthorized public — that constitutes the injury alleged by the Association in Count I of its Complaint. The Association’s injunction claim cannot have accrued earlier than the time this injury occurred. It cannot affirmatively be determined from the face of the Complaint when allegedly unauthorized members of the public began using the Club’s amenities. If the members of the public about which the Association complains began using the Club’s amenities within the five-year limitations period, i.e., on or after July 2004, the Association’s claim would not be barred by the statute of limitations. If, however, the unauthorized use began beyond the five-year limitations period, Count I would be barred. Consequently, the trial court’s dismissal of Count I without leave to amend was erroneous.
*1093 2. Claims for Declaratory Relief (Counts II and IV)
In Count II, the Condominium Association sought a declaratory judgment announcing that Sections 3.2 (requiring unit owners to pay costs and expenses related to maintenance, management, and operation of properties, facilities and services outside the condominium property), 5.1(d) (reserving to the developer and its successors and assigns an easement over walkways, driveways, and parking spaces and facilities), and 15.4(c) and (d) (requiring developer’s written consent to amend Declaration in certain situations) of the Declaration are void and unenforceable pursuant to sections 718.122 (establishing presumption of unconscionability of lease for use of recreational or other common facilities by condominium unit owners when nine enumerated factors are present) and 718.302, Florida Statutes (“Any grant or reservation made by a declaration ... shall be fair and reasonable.”). In Count IV, the Condominium Association sought a declaratory judgment announcing that portions of Section 12.9 of the Declaration (governing club membership and fees) are void and unenforceable.
The limitations period for “a legal or equitable action on a contract, obligation, or liability founded on a written instrument” is five years. § 95.11(2)(b), Fla. Stat. (2011). Thus, the Condominium Association may not assert any claims for declaratory relief that accrued before July 2004. Pursuant to section 95.031(1), Florida Statutes, the Condominium Association’s claims for declaratory relief accrued when the last element constituting the cause of action occurred. The elements of an action seeking a declaratory judgment require the plaintiff to show there is “[1] a bona fide adverse interest between the parties concerning a power, privilege, immunity or right of the plaintiff; [2] the plaintiffs doubt about the existence or non-existence of his rights or privileges; [3] that he is entitled to have the doubt removed.” State Dep’t of Envtl. Prot. v. Garcia, 99 So.3d 539, 545 (Fla. 3d DCA 2011) (quoting Conley v. Morley Realty Corp., 575 So.2d 253, 255 (Fla. 3d DCA 1991)).
The trial court concluded that the Condominium Association’s claims for declaratory relief accrued “at the time the plaintiffs became bound under the contract—(1979)—or at the latest decades ago when the developer turned over control of the condo to the association.” (Order at 2.) The trial court, however, did not confine itself to the four corners of the Complaint when it determined that the developer turned over control of the condominium “decades ago.” (Order at 2.) The Condominium Association’s Complaint does not identify the date on which turnover occurred, nor can any timeframe be inferred from the allegations in the Complaint or the documents attached thereto. Thus, while we recognize that section 718.124, Fla. Stat. (2011) (tolling a condominium association’s claims in law or equity prior to turnover) may operate to bar Counts II and IV if all the elements of the Condominium Association’s claims for declaratory relief were present at turnover, the trial court could not reach this conclusion on the face of the Complaint as pled by the Condominium Association. Consequently, dismissal on this basis was erroneous. See Minor v. Brunetti, 43 So.3d 178, 179 (Fla. 3d DCA 2010) (observing that trial court is “confined to the facts alleged within the four corners of the complaint” when deciding a motion to dismiss).
Count II is premised solely on the allegedly unfair language of certain sections of the Declaration. Count TV, however, is premised on the payment of annual *1094 assessments beyond an “initial membership fee,” and asks the trial court to construe the unit owners’ rights and obligations under the Declaration in light of changed circumstances, i.e., the collection of fees in excess of the initial membership fee described in the Declaration. If this change of circumstances occurred within the limitations period, ie., in or after July 2004, the Association’s claim for declaratory relief would not be barred by the statute of limitations. If, however, it occurred beyond the limitations period, the claim would be barred. Because the Condominium Association’s Complaint contains no allegation identifying the date on which unit owners began paying these allegedly excessive annual fees, nor can this information be inferred from the Complaint’s allegations or attachments, the trial court erred when it dismissed Count IV with prejudice.
3. Claims for Unjust Enrichment (Counts III and VI)
In Count III, the Condominium Association demanded the value of its maintenance, management, and operation payments made pursuant to Section 3.2 of the Declaration. In Count VI, the Condominium Association demanded the value of its annual membership fees and dues allegedly paid in violation of Section 12.9(f) of the Declaration.
The limitations period for an unjust enrichment action is four years. Swafford v. Schweitzer, 906 So.2d 1194, 1195 (Fla. 4th DCA 2005); see also § 95.11(3)(p), Fla. Stat. (allowing four years to bring “[a]ny action not specifically provided for in these statutes”). Thus, the Condominium Association may not assert any claims for unjust enrichment that accrued before July 2005 or seek damages for payments made before July 2005.[11] “The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.” Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994); see also Swafford, 906 So.2d at 1195.
The trial court concluded that the Condominium Association’s unjust enrichment claims accrued “in or about 1979 when the association’s members first began paying monthly dues.” (Order at 2.) The Condominium Association’s Complaint, however, does not allege the date that the payments began. Consequently, the trial court erred when it dismissed Counts III and VI with prejudice.
4. Claim for Breach of Contract (Count V)
In Count V, the Condominium Association sought to recover annual club membership fees and dues allegedly paid in violation of Section 12.9(f) of the Declaration (limiting club assessments to an “initial membership fee”).
The limitations period for “a legal or equitable action on a contract, obligation, or liability founded on a written instrument” is five years. § 95.11(2)(b), Fla. Stat. Thus, the Condominium Association may not assert any claims for breach of contract that accrued before July 2004. “The elements of a breach of contract action are: (1) a valid contract; (2) a materi *1095 al breach; and (3) damages.” Schiffman v. Schiffman, 47 So.3d 925,'927 (Fla. 3d DCA 2010) (quoting Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000)).
The trial court concluded that the Condominium Association’s breach of contract claim accrued “in or about 1979 when the association’s members first began paying monthly dues.” (Order at 2.) “Florida case law consistently holds that a cause of action for breach of contract accrues and the limitations period commences at the time of the breach.” Clark v. Estate of Elrod, 61 So.3d 416, 418 (Fla. 2d DCA 2011) (quoting Technical Packaging, Inc. v. Hanchett, 992 So.2d 309, 313 (Fla. 2d DCA 2008)); see also Brooks Tropicals, Inc. v. Acosta, 959 So.2d 288, 293 (Fla. 3d DCA 2007) (determining that limitations period ran from time contract was breached). However, where an obligation is continuing in nature, a party’s “ongoing nonperformance constitute^] a continuing breach while the contract remain[s] in effect.” City of Quincy v. Womack, 60 So.3d 1076, 1078 (Fla. 1st DCA 2011). The Condominium Association’s Complaint alleged that the Hotel and Club Owner breached the Declaration when it charged annual fees and dues in excess of the initial membership fee, and that this breach is continuing in nature. If the Hotel and Club Owner breached the Declaration within the five-year limitations period, i.e., in or after July 2004, the Association’s breach of contract claim for payment made on or after that date would not be barred by the statute of limitations. Consequently, the trial court erred when it dismissed Count V with prejudice.
B. Leave to Amend
Lastly, we address the trial court’s denial of the Association’s motion for leave to amend its Complaint. We find that the trial court did not have discretion to deny the Association leave to amend. See Fowler v. Paradise Lakes Condo. Ass’n, 133 So.3d 576 (Fla. 2d DCA 2014) (reversing dismissal of complaint with prejudice; “[A] trial court does not have discretion to deny leave to amend on the basis that the complaint is not amendable until (1) the defendant has filed an answer or (2) the plaintiff has already exercised the right to amend once.” (quoting Williams v. Gaffin Indus. Sens., Inc., 88 So.3d 1027, 1030 (Fla. 2d DCA 2012))). “Leave of court [to amend a pleading] shall be given freely when justice so requires.” Fla. R. Civ. P. 1.190(a). “This is generally interpreted to allow a plaintiff to amend his complaint at least one time in an attempt to state a cause of action unless it is clear that a plaintiff cannot in good faith allege a set of circumstances sufficient to state a cause of action.” Lambrix v. Dugger, 547 So.2d 1265, 1265 (Fla. 1st DCA 1989). In light of this well-established law, the trial court’s dismissal of the Condominium Association’s first Complaint with prejudice was an abuse of discretion. See Lambrix, 547 So.2d at 1265; see also W. Kendall Holdings, LLC v. Downrite Eng’g Corp., 112 So.3d 614, 616 (Fla. 3d DCA 2013) (reversing dismissal with prejudice as “plaintiff is entitled to amend a complaint once as of right before a responsive pleading is filed”); Posey v. Magill, 530 So.2d 985, 985 (Fla. 1st DCA 1988) (“Unless it is clear from the face of a complaint that amendment would be futile, failure to grant a plaintiff at least one opportunity to amend his complaint constitutes an abuse of discretion”).
V. CONCLUSION
For the reasons stated above, we reverse the trial court’s order dismissing the Association’s claims for injunctive and declaratory relief, unjust enrichment, and *1096 breach of contract with prejudice. In addition, we reverse the trial court’s order denying the Association leave to amend its Complaint.
Reversed and remanded for further proceedings consistent with this opinion.

. Because we conclude the trial court’s dismissal of the Condominium Association’s Complaint based on the statute of limitations was reversible error at this stage in the pleadings, we do not address the trial court’s dismissal based on the doctrine of laches. Moreover, nothing in this opinion should be construed to foreclose the Appellees/Defen-dants from asserting any legal or equitable defenses against the Condominium Association’s claims if any of those claims accrued within the limitations period.

. For ease of reference, the following table identifies the named defendants and their roles.
[[Image here]]
*1086 [[Image here]]

. Count VII remains pending in the trial court. Because Counts I-VI are not legally or factually related to Count VII, the Court may review the trial court's order dismissing Counts I through VI. See Harrison v. J.P.A. Enters., LLC, 51 So.3d 1217, 1219 (Fla. 1st DCA 2011) (explaining that a “partial dismissal of a complaint is only reviewable when it is established that the dismissed claims are not legally and factually interrelated with the remaining claims” (quoting Lambou v. Wakulla Cnty., 919 So.2d 678, 678-79 (Fla. 1st DCA 2006)), and authorities cited therein). "The test to determine whether counts of a multi-count complaint are interrelated, so as to preclude a piecemeal appeal, is whether the counts arise from a set of common facts or a single transaction ...Harrison, 51 So.3d at 1219-20 (quoting Mass. Life Ins. Co. v. Crapo, 918 So.2d 393, 394 (Fla. 1st DCA 2006)).

. The Final Judgment incorporated and ratified a settlement agreement in which the owners of Fair Isle agreed to certain restrictive covenants pertaining to the development of Fair Isle (the "Settlement Agreement”). A copy of the Final Judgment was attached to the Complaint.

. The Condominium Association's Complaint and briefs refer to Section 3.5, which does not exist in the Declaration. At oral argument, counsel for the Condominium Association confirmed that references to Section 3.5 in the Complaint and briefs filed in this Court should be references to Section 5.1 of the Declaration.

. A copy of the Declaration was attached to the Complaint.

. Fair Isle was developed by Sun Bank of Miami. The Hotel and Club Owner, the Marina Owner, and Cl I Spa, LLC, the owner of a fifty percent interest in the Spa Owner, are subsidiaries of Sun Bank’s successor in interest.

. By law, a condominium association has the power to make and collect assessments; lease, maintain, repair and replace the common elementó or association property; acquire title to property or otherwise hold, convey, lease, and mortgage association property for the use and benefit of its members in the manner specified in the declaration or, if the declaration is silent, with the approval of seventy-five percent of the total voting interests; subject to a provision regarding the bylaws, to convey through its board of administration a portion of the common elements to a condemning authority for the purposes of providing utility easements, right-of-way expansion, or other public purposes, whether negotiated or as a result of eminent domain proceedings; purchase any land or recreation lease upon the approval of the voting interests as required by the condominium declaration, or, if the declaration is silent, as required to amend the declaration to permit the acquisition; purchase units in the condominium and to and hold, lease, mortgage, or convey the units, unless prohibited by the declaration, articles of incorporation, or bylaws of the association; unless prohibited by the declaration, to grant, modify, or move any easement that is part of, or crosses, the common elements or association property, without the joinder of any unit owner. § 718.111(4), (7), (9), (10) (2012); see abo 10 Fla. Jur. 2d Condominiums & Coop. Apts. § 122 (2012).

. "There are essentially two categories of cases in which a condominium association attempts to enforce rules of restrictive uses. The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association’s board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use.” Woodside Vill. Condo. Ass’n, 806 So.2d at 457.

. The Condominium Association’s Complaint was filed on July 10, 2009.

. We further note that any potential unjust enrichment claim as to Westgroup is limited as the complaint alleges that Westgroup was replaced by Grove Hotel Partners, LLC, in November of 2008 as the lessee of the Hotel, Club and Spa.