# Third District Court of Appeal

## State of Florida

Opinion filed March 1, 2017.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D13-1821
Lower Tribunal No. 12-19002

————————————

**Cecil Rolle,**
Appellant,

vs.

**Cold Stone Creamery, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Jonathan P. Stevens (Gainesville); Melanie C. Hapner (Fort Lauderdale), for appellant.

Zarco Einhorn Salkowski and Brito, P.A., and Robert M. Einhorn, Alejandro Brito, Christopher Wiesman, and Alaina B. Siminovsky, for appellees The NIACCF, Inc., Robert Zarco, Esq., Zarco Einhorn Salkowski and Brito, P.A., Rodolfo Puig, Frank Caperino, and Edward Reesman; Kubicki Draper and Caryn L. Bellus and Bretton C. Albrecht, for appellees Cold Stone Creamery, Inc., The Kahala Corp., and Daniel Beem.

Before LAGOA and FERNANDEZ, JJ., and SHEPHERD, Senior Judge.

LAGOA, J.

Cecil Rolle ("Rolle") appeals from orders dismissing his First Amended Complaint against Cold Stone Creamery, Inc. ("Cold Stone"), the Kahala Corp. ("Kahala"), the National Independent Association of Cold Stone Creamery Franchisees, Inc. ("NIACCF"), Robert Zarco, Esq. ("Zarco"), Zarco Einhorn Salkowski & Brito, P.A. ("Zarco P.A."), Daniel Beem, Rodolfo Puig, Frank Caperino, and Edward Reesman (collectively, "Appellees"), with prejudice. We reverse the two orders of dismissal with prejudice because the trial court went outside the four corners of the complaint and its attachments in granting the Appellees' motions to dismiss.

I.     FACTUAL AND PROCEDURAL HISTORY

In 2010, Rolle, a former Cold Stone franchisee, participated in a CNBC documentary titled, "Behind the Counter: The Untold Story of Franchising" (the "Documentary"). Cold Stone declined an invitation to participate in the Documentary. The Documentary began airing on December 16, 2010.

In response to the Documentary airing, Cold Stone retained Zarco to represent the Cold Stone Creamery Franchisee National Advisory Board ("NAB") and NIACCF. On December 23, 2010, Zarco sent a letter (the "Letter") to David Sternlicht, media counsel for CNBC.[1] In the Letter, Zarco chastised CNBC for broadcasting the Documentary and stated that Rolle made false and defamatory statements about Cold Stone in the Documentary. Zarco also defended Cold

---

[1] The Letter is attached as an exhibit to Rolle's First Amended Complaint.

Stone's business practices against Rolle's claims and demanded that CNBC stop broadcasting the Documentary. The Letter did not explicitly threaten litigation against CNBC or Rolle, but concluded as follows:

> For the numerous reasons expressed herein, we demand that you immediately discontinue rebroadcasting the show. Please contact me to discuss what appropriate remedy can be crafted to correct the damage that has already been done. Because of the urgency of this matter, I request that you call me over the weekend on my personal cell phone, REDACTED, as time is of the essence.

> Of significance to this appeal, the Letter contained a number of comments critical of Rolle's business practices and ethics that Rolle alleges are false and defamatory:

- "Evidently, Rolle was not a good businessman or ethical at that. He ran several personal expenses through his business, including but not limited to expensing over $1,000 on University of Florida football tickets, knowing full well that it violated federal tax laws and was contrary to the mandates of the Internal Revenue Code."

- "Despite such knowledge, Rolle also paid medical bills using funds generated by his Cold Stone business for an injured employee because he refused to carry worker's compensation insurance."

- "Moreover, after Rolle's Cold Stone franchises failed, he opened his own ice cream location in the same location as one of his former Cold Stone businesses and named it 'Frost Top Creamery,' in clear violation of the terms of his franchise agreement with Cold Stone."

- "Then, on the show, CNBC and Rolle make several false and defamatory statements regarding several expenses, seemingly connecting these expenses to the 'hidden expenses' allegedly incurred by the franchisees."

3

- "In addition, Rolle states that Cold Stone requires its franchisees to purchase equipment from a company that it controls."

In addition to sending the Letter to CNBC, Zarco also published the Letter to Janet Sparks ("Sparks"), a freelance writer for BlueMauMau.org, an internet blog that publishes stories and news for franchisees. On December 26, 2010, Sparks published an article titled, "CNBC Shelves Cold Stone Story after Zarco Attacks." Sparks quoted portions of the Letter in the article, and the Letter was attached to the article via hyperlink as a PDF. The article reported that Zarco P.A. planned to file suit on behalf of NAB and NIACCF, and that Cold Stone was planning "a potential legal campaign to clarify [its] position and correct the inaccuracies presented in the CNBC piece."

On January 17, 2012, Rolle filed the three-count First Amended Complaint against Appellees, alleging defamation per se, defamation per quod, and conspiracy to defame. Appellees moved to dismiss the First Amended Complaint on several grounds. Following a hearing on Appellees' motions to dismiss, the trial court subsequently entered two identical orders dismissing the First Amended Complaint as to all Appellees with prejudice. With respect to all the Appellees, the trial court found "that Counts I, II and III of Plaintiff's First Amended Complaint are subject to dismissal on the grounds that the statements allegedly made and conduct allegedly engaged in by Defendants were made in the course of a judicial

proceeding and, thus are absolutely privileged." The trial court further found "that as a result of the existence of the absolute privilege, any attempt by Plaintiff to allege these claims in a subsequent pleading would be futile, thus, the dismissal of Counts I, II and III of Plaintiff's First Amended Complaint is **WITH PREJUDICE**." (emphasis in original). This appeal ensued.

II.   ANALYSIS

We review de novo a trial court's order granting a motion to dismiss. See Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLP, 137 So. 3d 1081, 1089 (Fla. 3d DCA 2014). The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint, not to determine factual issues." See Fla. Bar v. Greene, 926 So. 2d 1195, 1199 (Fla. 2006). Unlike a motion for summary judgment, when ruling on a motion to dismiss, "'[a] court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations.'" See Pacific Ins. Co., Ltd., v. Botelho, D.O., 891 So. 2d 587, 590 (Fla. 3d DCA 2004) (quoting Barbado v. Green & Murphy, P.A., 758 So. 3d 1173, 1174 (Fla. 4th DCA 2000)). Additionally, all allegations must be taken as true, and "any reasonable inferences drawn from the complaint must be construed in favor of the non-moving party." Minor v. Brunetti, 43 So. 3d 178, 179 (Fla. 3d DCA 2010).

Finally, in considering a motion to dismiss, a trial court is required to consider exhibits attached to and incorporated into the complaint. See Harry Pepper & Assocs. v. Lasseter, 247 So. 2d 736, 736 (Fla. 3d DCA 1971); see also

5

K.R. Exch. Servs., Inc. v. Fuerst, Humphrey, Ittleman, PL, 48 So. 3d 889, 894 (Fla. 3d DCA 2010); Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008); Merovich v. Huzenman, 911 So. 2d 125, 128 n.5 (Fla. 3d DCA 2005).

Affirmative defenses are generally matters raised in an answer and not a motion to dismiss. Grove Isle, 137 So. 3d at 1089. "However, where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the defense bars the action as a matter of law, a motion to dismiss raising the defense is properly granted." Id.

Appellees assert the Letter is protected by absolute privilege, because it was sent during the course of and had a relationship to judicial proceedings—i.e., ongoing litigation between Rolle and Cold Stone. Alternatively, Appellees argue the Letter is protected as a statutorily mandated pre-litigation notice. "The law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged . . . regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry." Fridovich v. Fridovich, 598 So. 2d 65, 66 (Fla. 1992) (citing Myers v. Hodges, 44 So. 357, 361 (1907)). "Th[e] privilege . . . arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." Ange v. State, 123 So. 916, 917 (Fla. 1929). See also Fridovich, 598 So. 2d at 66 (same);[2] Burton v. Salzberg, 725 So. 2d 450,

6

451 (Fla. 3d DCA 1999) (same).

While it may well be true that the Appellees will ultimately prevail on an affirmative defense such as absolute privilege, at this stage of the proceeding, there is nothing in the four corners of the complaint or its exhibits that allege a fact or facts to support that defense. Indeed, neither the complaint nor its exhibits allege that a judicial proceeding existed at the time the Letter was sent to either CNBC or to the reporter, Janet Sparks.

Moreover, a review of the First Amended Complaint fails to allege that the Letter was sent as a statutory five day pre-suit notice under section 770.01, Florida Statutes (2011). The Letter does not, on its face, indicate that it was sent as a five day pre-suit notice required under section 770.01.

In contrast, other exhibits attached to the First Amended Complaint, specifically eight letters from Rolle's counsel to Appellees, show on their face that they were sent pursuant to section 770.01. Indeed, all eight letters contain a section entitled "Five-Day Notice for Defamation Claim Pursuant to Fla. Stat. § 770.01." The first paragraph of each letter further states that the purpose of the letter is to serve as notice that, pursuant to section 770.01, Rolle intends to file a civil action in the State of Florida for several false and defamatory statements.[3]

---

[2] The Court in <u>Fridovich</u> receded from <u>Ange</u> to the extent those decisions are inconsistent, stating: "defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively <u>qualifiedly</u> privileged." <u>Fridovich</u>, 598 So. 2d at 69 (emphasis added.)

7

Additionally, those letters from Rolle's counsel appear to comply with section 770.01's requirement to identify the alleged false and defamatory statements made by the Appellees. Thus, these letters show on their face that they were sent pursuant to the statutory five-day pre-suit notice.

Indeed, without additional factual information it is difficult to characterize the Letter as a pre-suit notice as required by section 770.01. The Letter did not

---

[3] Specifically, the exhibits are letters from: (1) counsel for Rolle, Jonathan P. Stevens ("Stevens") to Zarco, stating that "my client, Cecil Rolle, intends to file a civil action against you personally and Zarco Einhorn Salkowski & Brito, P.A. ("ZESB") in the State of Florida for several false and defamatory statements made by you"; (2) Stevens to Michael Reagan, Executive Vice President and General Counsel at Kahala and Cold Stone, stating that "my client, Cecil Rolle, intends to file a civil action in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of Kahala Corp ("Kahala") and Cold Stone Creamery, Inc. ("Cold Stone")"; (3) Stevens to Daniel Beem at Cold Stone Creamery, Inc. National Advisory Board, stating that "my client, Cecil Rolle, intends to file a civil action against you personally and the Cold Stone Creamery, Inc. National Advisory Board (the "NAB") in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you and the NAB"; (4) Stevens to Rodolfo Puig at NIACCF, stating that "my client, Cecil Rolle, intends to file a civil action against you personally and the National Independent Association Of Cold Stone Creamery Franchisees, Inc. (the "NIACCF") in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you and the NIACCF"; (5) Stevens to Daniel Beem at Cold Stone, stating that "my client, Cecil Rolle, intends to file a civil action against you in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you"; (6) Stevens to Rodolfo Puig, stating that "my client, Cecil Rolle, intends to file a civil action against you in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you"; (7) Stevens to Frank Caperino stating that "my client, Cecil Rolle, intends to file a civil action against you in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you"; and (8) Stevens to Edward Reesman stating that "my client, Cecil Rolle, intends to file a civil action against you in the State of Florida for several false and defamatory statements made by Robert Zarco on behalf of you."

warn CNBC that a lawsuit was imminent, and thus, on its face, the Letter cannot be said to provide notice of an impending lawsuit. Instead, the Letter can better be described as a demand that CNBC cease and desist rebroadcasting the documentary, as it ends with the following statements:

> For the numerous reasons expressed herein, we demand that you immediately discontinue rebroadcasting the show. Please contact me to discuss what appropriate remedy can be crafted to correct the damage that has already been done. Because of the urgency of this matter, I request that you call me over the weekend on my personal cell phone, REDACTED, as time is of the essence.

Because the counts in the First Amended Complaint otherwise state valid causes of actions,[4] we find that the trial court improperly dismissed Rolle's pleading. See Beach Roundhhouse Town Corp. v. Skinner, 356 So. 2d 881 (Fla. 3d DCA 1978) (reversing dismissal by trial court when four corners of complaint did not support defense that corporations had no authority from board of directors or corporate officers to bring suit). We, therefore, remand for the trial court to deny Appellees' motions to dismiss as we conclude that the First Amended Complaint, taken as true, states causes of action for defamation per se, defamation per quod, and conspiracy. Our decision, however, expresses no position on whether Rolle's causes of action or Appellees' affirmative defenses have merit.

---

[4] The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). A review of the complaint shows that each element has been properly asserted.

9

## III.   CONCLUSION

Based on the foregoing, we find that because the trial court went outside the four corners of the First Amended Complaint in granting the motions to dismiss, we reverse the trial court's order with instructions to reinstate Rolle's claims.

REVERSED AND REMANDED.